## W. R. MEREDITH v. THE STATE.

### No. 3946. Decided February 23, 1916.

### Rehearing denied March 22, 1916.

**1.—Theft—Agent—Life Insurance Company—Trust Fund—Statutes Construed.**

Where the indictment alleged, and the proof showed, that the defendant received money from a person who wished to insure in a life insurance company doing business in this State, upon the express condition that he would pay it to said company when the policy was issued, or if no policy was issued to the applicant defendant as agent of said company would return it to the applicant upon the surrender of the receipt he gave him, within sixty days, he held this money in trust upon the given conditions named in said receipt, and by appropriating it to his private use was guilty of theft under article 691, Penal Code.

**2.—Same—Indictment—Ownership—Pleading.**

Where, upon trial of theft of trust funds of an insurance company which defendant had collected as a premium, for which a policy was to be issued upon the happening of certain conditions or the money would revert to the applicant, and it was an impossibility under the circumstances to allege the ownership of the money so received in any one individual, it was unnecessary to allege in the indictment specifically who was the owner of said money; the indictment following the statute under the Act of 1909, which is constitutional.

**3.—Same—Constitutional Law—Caption of Act.**

The Act of 1909, chapter 108, regulating the life insurance business in this State, and providing a penalty for violation thereof, is constitutional, and the caption thereof is sufficient.

**4.—Same—Indictment—Corporation—Life Insurance Company—Judicial Knowledge.**

Where, upon trial of theft of money which defendant received as premium for the Aetna Life Insurance Company, the indictment alleged that defendant was an agent of said company, which was then and there a life insurance company lawfully doing business in the State of Texas, it was equivalent to an allegation that it was an incorporated company, and under article 463, Code Criminal Procedure (the Act in question being a general law), all the courts of the State must take judicial cognizance of its provisions, and there was no error in refusing to quash the indictment on the ground that it failed to allege that said life insurance company was a corporation it being the one alleged to be defrauded. Following Reesman v. State, 59 Texas Crim. Rep., 430. Qualifying White v. State, 24 Texas Crim. App., 231, and other cases.

**5.—Same—Evidence—Return of Premium.**

Upon trial of theft of money received by defendant as premium on a policy as agent of a life insurance company, there was no error in permitting the State agent of said life insurance company and the applicant for insurance to testify that the applicant received back from said State agent the said money; the defendant himself testifying that he told said applicant to take the matter up with said State agent.

**6.—Same—Evidence—Contract.**

Where defendant was indicted for theft of money received as premium for the use of a life insurance company, there was no error in admitting testimony that defendant entered into a contract making him the agent of said life insurance company and identifying said contract.

**7.—Same—Evidence—Contract—Life Insurance Company—State Agent.**

Where defendant was indicted for theft of money received as premium for a life insurance company, and one of the State's witnesses was a State agent of said company, there was no error in admitting testimony that said State agent had a contract as such with said company; the contents of said contract not being placed in evidence.

**8.—Same—Evidence—Commission—Agent.**

Where, upon trial of theft of money received by defendant, as agent and as premium for a life insurance company, there was no error in refusing to admit oral testimony as to the amount of commission he was to receive; as said contract was in writing and stipulated the amount of the commission, as defendant himself testified.

**9.—Same—Evidence—Trust Fund—Theft.**

Where, upon trial of theft of money received by defendant as agent and as premium for a life insurance company, the evidence showed that defendant had delivered to the applicant for insurance a conditional receipt and the contract between defendant and said company provided that said money was a trust fund and should be paid over immediately to the manager of said company, there was no error in admitting the testimony of said manager that defendant had not paid him said money, and that defendant had no permission to appropriate the same to his own use.

**10.—Same—Sufficiency of the Evidence—Second Applicaton for Insurance—Good Faith.**

Where, upon trial of theft of money received by defendant as agent of a life insurance company, defendant issued the applicant for insurance a conditional receipt, the fact that said applicant failed to sign the second application for such insurance, would not alter the condition under which defendant held said money, and there was no error in refusing to instruct the jury that if said applicant did not sign the second application to acquit the defendant; the testimony not raising such an issue, and the question of good faith was not involved.

**11.—Same—Misdemeanor—Felony—Commission—Charge of Court.**

Where defendant was indicted, charged with theft of money which he received as agent of a life insurance company as premium on a life insurance policy to be issued under certain conditions, and he was not entitled to his commission until the happening of said conditions, there was no merit in his contention that if his commission were deducted from the amount of money he received, the offense, if any, would only be a misdemeanor, and there was no error in the court's failure to submit a charge to that effect.

**12.—Same—Joint Ownership—Conditional Contract—Commission—Agent.**

Where defendant was tried and convicted for the theft of money which he received as agent as premium for a life insurance company, upon condition that the money was to be returned to the applicant if the latter's application was rejected by said company, he was not a joint owner of the money so collected by reason of his commission, to which he was not entitled until a policy issued, and there was no error in the court's failure to submit such issue to the jury.

Appeal from the District Court of Medina. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of theft of money received by defendant as agent and held in trust for a life insurance company, penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*De Montel & Fly* and *John R. Storms,* for appellant.—On question of criminal intent: ,Chicago Life Insurance Co. v. Robinson, 176 S. W. Rep., 1010.

On question of insufficiency of indictment in failing to allege that the life insurance company is a corporation: White v. State, 24 Texas Crim. App., 231; Holloway v. Memphis, El Paso, Pacific Ry. Co., 23 Texas, 465.

*C. C. McDonald,* Assistant Attorney General, and *L. J. Brucks,* District Attorney, for the State.—On question of sufficiency of the indictment: Walls v. State, 77 S. W. Rep., 8.

HARPER, JUDGE.—Appellant was prosecuted and convicted under an indictment, omitting formal parts, alleging that appellant "was an insurance agent and solicitor, towit:  An agent and solicitor for the Aetna Life Insurance Company, of Hartford, Connecticut, which was then and there a life insurance company lawfully doing business in the State of Texas; and of which J. N. Houston was the manager for the State of Texas; and the said ·W. R. Meredith, as such agent and solicitor, did then and there collect premiums and was authorized to collect premiums for the said Aetna Life Insurance Company; and he, the said W. R. Meredith, as such agent and solicitor aforesaid, did then and there collect and receive from one Frank Posey the sum of sixty-eight dollars in current money of the United States of America, of the value of sixty-eight dollars, as a premium on a policy of life insurance in said Aetna Life Insurance Company; and he, the said W. R. Meredith, did then and there unlawfully and fraudulently convert, misapply and appropriate to his own use the said money so received and collected by him as such agent and solicitor as aforesaid, contrary to the instructions of and without the consent of the said Aetna Life Insurance Company, and contrary to the instructions and without the consent of the, said J. N. Houston, who was then and there the manager for the State of Texas for said Aetna Life Insurance Company; which said money had theretofore come into the possession of and was under the care of the said W. R. Meredith by virtue of being such agent and solicitor for said Aetna Life Insurance Company, as aforesaid, against the peace and dignity of the State."

This indictment was brought under article 691 of the Penal Code, which reads:

"Any insurance agent or solicitor who collects premiums for an insurance company lawfully doing business in this State and who embezzles or fraudulently converts or appropriates to his own use, or with intent to embezzle, takes, secretes or otherwise disposes of or fraudulently withholds, appropriates, lends, invests or otherwise uses or applies, any money or substitutes for money received by him as such agent or broker, contrary to the instructions or without the consent of the company, for or on account of which the same was received by

him, shall be deemed guilty of theft of property of the value of the amount involved in either case and shall be punished accordingly."

Appellant was agent of the Aetna Life Insurance Company, and collected from F. M. Posey the sum of $68.34, issuing to Posey the following receipt:

"Hondo, Tex. Oct. 15, 1914.

Received from F. M. Posey, of Hondo Texas          Cash $68.34

Sixty Eight & 34/100 Dollars to be applied to payment of the first premium under a policy of $2000 this day applied for in the Aetna Life Insurance Company, when said policy is issued. It is hereby understood and agreed that insurance under said policy shall commence at the time it is issued, and that in case the application shall not be approved by the Company, and a policy is not issued, the said payment shall be returned on surrender of this receipt within sixty days from the date hereof; and said Company shall not be bound to any contract of insurance until a policy is issued.

"Not binding unless countersigned by a duly authorized agent of the Company.

"Countersigned at Hondo Tex. this 15th day of Oct 1914.

"(Sgd)    W. R. Meredith Agent    C. E. Gilbert Secretary.

"In every instance when the entire first premium is paid either in cash or by note, pending the issue of a policy, this form must be executed in duplicate, the applicant retaining the original, the duplicate being forwarded at once to the Company."

It was the appropriation of this money by appellant to his own use upon which the indictment is based. It is thus seen that appellant received this money as agent of the life insurance company upon the express condition that he would pay it to the company when the policy was issued, or if no policy was issued on Posey's application, he, as agent of the company, would return it to Posey upon the surrender of the receipt in sixty days. Under the contract he had with the company, and the receipt he issued to Posey, he held this money in trust upon the given conditions named and under the contract the life insurance company did not become absolute owner of it until a policy was issued to Posey on the application, nor could it maintain suit for it until the happening of that condition. However, while Posey had a reversionary interest in the money, in case no policy was issued on the application, yet he had no control over it, nor right to demand its return until the application for insurance was refused by the company. Under such circumstances it was an impossibility to allege the ownership of the money in any one individual, and the Legislature adopted the above statute to reach just such conditions, and under this statute it is unnecessary to allege in the indictment specifically who was the owner of the money, but to allege, as was done in this indictment, that as agent of the life insurance company appellant had collected from Posey the money as premium on a policy, and while holding it as such

agent did fraudulently convert to his own use the money so held without the consent of the life insurance company. Appellant could not and would not have any personal interest in the money, at least, until the policy was issued, under the terms of his contract with the company, and the money would be in his hands merely as a trust fund, it to belong to the company in case it accepted the application for insurance and issued a policy thereon. Then and not until then would appellant be entitled to any of it as commission. In case no policy was issued on the application, he was entitled to and would receive no commission out of the money, but by the terms of the contract under which he received the money, he, as agent of the company, bound himself to return all of the money so received to Posey, the applicant for insurance, and the Legislature had the authority to declare the conversion of the money to his own use by the person holding same under such circumstances to be an offense, and has done so

The contention that the Act of 1909 is unconstitutional and void, on the ground that the caption is insufficient, can not be sustained. The caption is on page 192, Acts of 1909, it being chapter 108, and is, in effect, a codification of the laws governing and regulating the doing of a life insurance business in this State. The section defining this offense is section 51 of that Act, and, among other things, the caption declares that it is intended "to regulate the business of such companies, and providing penalties for violations of the provisions of the Act."

The only other serious contention as to the validity of the indictment is based upon the contention that it failed to allege whether or not the Aetna Life Insurance Company was a joint stock company, partnership or corporation. This question has been frequently before this court, and at one time it was held that it was not necessary in any case to allege that the injured party was a corporation. The case of Price v. State, 41 Texas, 215, was a case in which Price was charged with the theft of a bale of cotton from the Houston & Texas Central Railroad Company, and our Supreme Court, in an opinion by Chief Justice Roberts, held: "It was not necessary to set out the charter in the indictment, or to allege it to be a chartered company otherwise than by name, as was done in this case." In the case of Halloway v. Memphis R. R. Co., 23 Texas, 465, Chief Justice Wheeler discusses at length when it is necessary to allege in the pleadings and prove that the plaintiff is a body corporate. He held that if the general laws of the State so declared, and the court in consequence must of necessity take judicial notice of it, it was not necessary to so allege and prove; but if incorporated by private Act it must be alleged to constitute good pleading and proven on the trial. Since its organization the question came before this court in a theft case, in the case of White v. State, 24 Texas Crim. App., 231, and the court discussed it at some length, and held: "We are of the opinion that such an allegation is requisite, and to say the least of it, it is beyond doubt the better practice." Since the decision in that case it seems to have become the settled law in this State, that where the alleged injured party is a corporation, it must

be alleged that it is a corporation, or words of equivalent import used. In Thurmond v. State, 30 Texas Crim. App., 539, an indictment was held defective because it failed to allege that the Lexington Ranch Company, from whom the property was stolen, was a corporation. See also Stallings v. State, 29 Texas Crim. App., 220; Hutton v. State, 38 S. W. Rep., 209; Roby v. State, 51 S. W. Rep., 1114.

On the other hand, it has become equally well settled, that such rule is not applicable where the failure to allege it was a corporation was in regard to a corporation other than the defrauded one. In Reeseman v. State, 59 Texas Crim. Rep., 430, the question was again before the court, and the authorities were reviewed, and the distinction drawn when it is and when it is not necessary to allege in the indictment that the named company is a corporation, partnership or joint stock company. Under all the decisions of this court it seems to be the settled rule that it was necessary to allege that the Aetna Life Insurance Company, as it was the company alleged to be defrauded, was a corporation, unless the statutes of this State give us judicial knowledge that it was an incorporated company. The insistence of the State is that the general statutes of this State do give this and all other courts judicial knowledge that only an incorporated company can legally do a life insurance business in this State, and when the indictment alleged that appellant was "an agent for the Aetna Life Insurance Company, *which was then and there a life insurance company lawfully doing business in the State of Texas*," it was equivalent to an allegation that it was an incorporated company, for no company other than an incorporated company could lawfully do a life insurance business in this State; and chapter 108 of the Acts of the Twenty-ninth Legislature (Ses. Acts, page 192) seems to support such contention. We are, therefore, of the opinion the court did not err in refusing to quash the indictment, nor in refusing to sustain the motion in arrest of judgment. The Act in question is a general law, and this court and all courts must take judicial cognizance of its provisions. Article 463 of the Code of Criminal Procedure provides that "matters of which judicial notice is taken need not be stated in an indictment." For a citation of authorities see section 373, White's Ann. Code of Crim. Proc.

In two bills of exception appellant complains of the court permitting J. N. Houston, State agent of the Aetna Life Insurance Company, and F. M. Posey to testify that he, Houston, had paid Posey back the $68.34 collected by appellant from Posey. Appellant himself testified that when Mr. Posey called on him about the matter, he told him his contract with the company had been cancelled, and he, Posey, "would have to take the matter up with Mr. Houston." Under such circumstances it was permissible for Posey to testify he did take it up with Mr. Houston, and received his money back.

Nor was there any error in permitting Mr. Houston to testify he and appellant entered into a contract, and identify the contract. It was dated at Austin, Texas, March 24, 1913; signed "J. N. Houston, manager," and endorsed: "I hereby accept the foregoing appointment, sub-

ject to all its terms and conditions. W. R. Meredith, agent." It is also endorsed "The Aetna Life Insurance Company hereby agrees to this appointment,—signed Aetna Life Insurance Company, by Frank Bushnell, Agency Secretary," and dated April 14, 1913. This is the original contract under which appellant was working; was accepted by him, and its terms are binding on him, and there was no error in admitting it in evidence.

As to the contract between Mr. Houston and the Aetna Life Insurance Company, he was not permitted to testify as to its contents, but only that he was State agent of the company. There was no error in permitting him to so testify. Of course, had he undertaken to testify as to the contents of the contract under which he was appointed State agent, then the contract would have been the best evidence. But the contents of the instrument were not sought to be proved; only the fact that he was State agent, and had entered into a contract with appellant, and then prove up the contract which appellant had entered into.

As the contract was in writing and specifically stipulated the amount of commission appellant was to receive upon each character of policy, there was no error in refusing to admit oral testimony as to the amount of commission he was to receive. Appellant himself testified: "As to the commission allowed, it is defined in the contract."

Nor was there any error in permitting Mr. Houston to testify that appellant had paid him no money on the Posey application. Appellant himself testified that he received the money from Mr. Posey, and issued him the receipt hereinbefore copied. That he had not paid the money to anyone. He said: "As to what I did with that money, I was waiting until the application, the examination, was finished. I had the money all the time. As to whether I still have the money, no, I have no recollection of what became of that particular money." Nor was there any error in permitting Mr. Houston to testify that he had not given appellant permission to appropriate the $68.34. Appellant, in the contract he entered into with Mr. Houston as manager of the Aetna Life Insurance Company, over his signature had agreed, "that all moneys collected by you under the terms of this appointment shall constitute a trust fund, separate and distinct from your other funds and not subject in any case to personal or any other use by you, and that such moneys shall be immediately paid over to the said manager of said company." Mr. Houston was the manager named in that contract and under this contract it was permissible for the manager named in the contract to testify that appellant had not paid him the money, and he had not given appellant permission to appropriate it to his own use.

The evidence was ample to sustain the verdict, and the court did not err in so holding.

As appellant received the money from Posey in his capacity as agent of the insurance company, and issued to him the receipt hereinbefore copied, the fact that Posey failed to sign the second application, if he did do so, would not alter the conditions under which appellant held

the money, and the court did not err in refusing to instruct the jury that if Posey did not sign the second application they would acquit appellant. Appellant had received the money as agent of the company under given conditions, and he, under no circumstances, would have the right to appropriate it to his own use.

If there was any testimony that appellant was holding the money until the Aetna Life Insurance Company had passed on Posey's application for insurance, the charge presenting that issue should probably have been given. But there was no testimony presenting such issue. Appellant himself testified he did not have the money—he was not keeping it—and he did not know what he had done with that specific money. He admitted he did not pay it to the insurance company or its manager, and did not give it back to Posey; and that he did not have it. Under such circumstances there could be no question of his right to keep the money in his possession until Posey signed the application, and keep it in his possession to pay to the life insurance company when the policy was issued. He admitted he had not kept it, but spent it for some purpose he could not name. The facts in this case show that appellant received the money from Posey while agent of the company, and issued him a receipt as agent of the company. He never sent an application to the company to act on, and if, in fact, Posey did not sign the application (although Posey swears he did), this would not and could not alter the capacity in which appellant held the money, and when the evidence goes further and shows that he had violated the trust and converted to his own use and benefit the money, there could be no question of good faith on appellant's part, when both Mr. Houston and Mr. Posey testify they gave him no permission or authority to use the money for his own benefit. If he still had the money in his possession, and he contended he was holding it in good faith under his construction of the contract, then such an issue might be in the case. But when he testifies he had spent the money without authority to do so from anyone, the question of good faith in the retention of the money does not arise on the evidence.

Appellant also contends that under the contract he was entitled to retain 40 per cent of the premiums collected as his commission, and if he did appropriate the $68.34, as he was entitled to 40 per cent of the amount, if guilty of any offense, he would only be guilty of a misdemeanor, and the court should have so instructed the jury. If the condition had arisen whereby appellant was entitled to a commission, there would be merit in his contention. But under the contract, under the receipt, and under a appellant's own testimony, he became entitled to no commission until a policy had been issued and delivered to Mr. Posey. As appellant at no time ever sent an application of Posey for insurance to the company, and he knew that no policy had been issued, he, under his contract, was entitled to no commission on this $68.34, and, therefore, if he was guilty of any offense, it was a felony and not a misdemeanor, and the court did not err in so holding.

There was no question in the case of appellant and the insurance

company being the "joint owners of the money collected by appellant from Posey." The money was paid by Posey to appellant for a specific purpose, and he in his contract had agreed to hold it as a trust fund to be paid to the company if a policy was issued on Posey's application; if no policy was issued, to repay it to Posey. It is true, if the policy had been issued to Posey, he would then have been entitled to 40 per cent of the amount as commission for his services. But as no application of Posey's was ever sent to the company by appellant, he could and would under no circumstances be entitled to any part of the money, and the court did not err in refusing to submit that issue to the jury.

We have carefully reviewed the exceptions to the charge of the court, and they nor either of them present any error. They have been sufficiently discussed in disposing of the foregoing questions and do not necessitate nor require further discussion of the propositions.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 22, 1916.—Reporter.]